UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

1

2

3    UNITED STATES OF AMERICA,        Case No. 1:10-cr-384

4            Plaintiff,

5        vs.                         CLEVELAND, OHIO
                                     DECEMBER 15, 2010
6    FRANK P. RUSSO,

7            Defendant.

8

TRANSCRIPT OF SENTENCING PROCEEDINGS
BEFORE THE HONORABLE KATHLEEN M. O'MALLEY
UNITED STATES DISTRICT JUDGE

9

10

11   APPEARANCES:

12   For the Government:        Ann C. Rowland,
                                *Assistant United States Attorney*
13
                                Antoinette T. Bacon,
14                              *Assistant United States Attorney*

15

     For the Defendant:        Roger M. Synenberg, *Esquire*
16

17   For Probation:            John Riffle

18

19

20
     Official Court Reporter:  Sarah E. Nageotte, RDR, CRR, CBC
21                             United States District Court
                               801 West Superior Avenue
22                             Court Reporters 7-189
                               Cleveland, Ohio 44113
23                             (216) 357-7186

24

25   Proceedings recorded by mechanical stenography, transcript
     produced by computer-aided transcription.

1          (Proceedings commenced at 3:58 p.m.)

2                        - - -

3          COURTROOM DEPUTY:  Your Honor, the case before

4     the Court this afternoon is United States of America versus

15:58:41  5     Frank Russo, Case Number 10-cr-384.

6          THE COURT:  Okay.  Before we begin, and so I

7     don't forget to mention this, I've been informed that there

8     was some tussling and pushing and shoving out on the plaza

9     on the way in for these proceedings, and it was essentially

15:59:03  10     conduct that doesn't reflect well on anyone in the City of

11     Cleveland.

12          So I'm not going to order marshals to be involved with

13     an ingress and egress to the Court, but I am going to ask

14     everyone to please be respectful of everyone else and to

15:59:19  15     make sure that we don't have a repeat of that activity on

16     the way out.

17          Okay.  We're here today for a sentencing of this

18     defendant.  As you all know, the Court accepted a guilty

19     plea from the defendant on September 16th of this year

15:59:37  20     pursuant to a substantial plea agreement between the

21     Government and the defendant that was executed near that

22     time.

23          The plea agreement is one that is pursuant to Rule

24     11(c)(1)(C), which means that the parties not only agreed to

15:59:55  25     certain stipulations and recommendations to the Court, but

1    in what is unusual in the pleas that I see, the parties also

2    agreed to a sentence certain in this matter.

3          It is ultimately up to the Court to determine whether

4    to accept that agreement, but I note that the agreement

16:00:16  5    is -- is binding on both sides in that if the Court

6    sentences the defendant to anything higher or other than the

7    sentence agreed to, the Government is not bound by this

8    agreement.  If the -- I'm -- if I sentence the defendant to

9    anything other than what is agreed to, the defendant is not

16:00:35 10    bound by this agreement.

11          I also note that this agreement is interconnected with

12    the agreement of defendant Vince Russo, such that if the

13    Court takes an action which would allow either party to

14    vitiate this agreement and the parties decide to do so, that

16:00:55 15    agreement, that other plea agreement would be vitiated as

16    well.

17          So with that recognition in mind, it's still important

18    for the Court to walk through the sentencing process and

19    calculations in this case and to address a variety of

16:01:11 20    matters that are yet unresolved, such as the scope of

21    restitution owed by the defendant.

22          So, first, the Court turns to the first step of its

23    sentencing calculation, which is to determine what an

24    application of the sentencing guidelines would properly call

16:01:30 25    for in this case.

1       In this case, as I said, the parties were very

2   specific with respect to the calculations that they engaged

3   in, but I want to walk through to make sure that the parties

4   remain in agreement with the calculations in light of the

16:01:49  5   Presentence Investigation Report, and I want to address the

6   objections to the report that were made.

7       So, first, as I understand it, the parties agree that

8   we begin with a base offense level of 14, that we increase

9   that base offense level by two because the -- there were

16:02:10  10   more than -- there was more than one bribe involved.  We

11   then increase that level by 16 because the value of the

12   payment or the bribes, as the parties have stipulated for

13   purposes of loss calculation, is placed between 1 million

14   and 2.5 million.

16:02:34  15       The -- there is a four-level increase because the

16   offense involved an elected official or public official in a

17   high-level decision making or sensitive position, and then

18   there is a four-level increase because the defendant is

19   properly characterized as a leader or organizer vis-a-vis

16:03:00  20   the criminal activity with which he is charged.

21       The parties also agree that it is appropriate to add a

22   two-level increase for obstruction of justice for the

23   reasons outlined and explained in the plea agreement, which

24   would put the defendant at a total adjusted offense level of

16:03:23  25   42 with respect to the first group of counts, those

1    having -- those essentially constituting the conspiracy and

2    related counts, so the Hobbs Act conspiracy, conspiracy to

3    commit bribery concerning programs receiving federal funds,

4    conspiracy to commit mail fraud and honest services fraud,

16:03:46  5    tampering with a witness, mail fraud, and the last Hobbs Act

6    conspiracy count.

7         The one issue that was open and as to which an

8    objection was raised is that the probation officer

9    recommended an additional two-level increase under 3B1.3(a)

16:04:07 10    on grounds that the defendant abused a position of public or

11    private trust in a manner that significantly facilitated the

12    commission or concealment of the offense.

13        The defendant, through Mr. Synenberg, objected to this

14    increase on grounds that it had not been included in the

16:04:30 15    Presentence Investigation Report, and after doing some

16    research and analyzing the question, it appeared to the

17    Court that -- that that increase, while factually there's no

18    doubt that there was an abuse of a position of trust, that

19    the increase is not appropriate in circumstances where the

16:04:52 20    base offense level actually encompasses the concept of abuse

21    of trust.

22        After consulting with the probation officer, the

23    Probation Office has agreed with the Court and, therefore,

24    we all agree with Mr. Synenberg that that objection is well

16:05:07 25    taken and that the guidelines themselves specifically

1    disallow that increase in these types of circumstances.

2         So I take it, Mr. Synenberg, that in light of the fact

3    that the Court and the probation officer have now withdrawn

4    that, that your objection is resolved?

16:05:25  5              MR. SYNENBERG:  Yes, Your Honor.

6         Thank you.

7              THE COURT:  Okay.  There was -- let me go back

8    then to the calculations.

9         There's a second grouping and those are the tax return

16:05:35 10  counts, Counts 17 through 21.  Here the base offense level

11   is 16, with a two-level increase for the dollar figure,

12   resulting in an adjusted offense level for the second

13   grouping of 18.

14        After consideration of the multiple count adjustment

16:05:54 15  and a reduction for acceptance of responsibility, as I

16   understand it, the parties agree that the appropriate

17   guideline calculation in this case would put the defendant

18   at a total adjusted offense level of 39.

19        Is that correct on behalf of the Government and does

16:06:14 20  the Government move for the third level for acceptance?

21              MS. ROWLAND:  Yes, Your Honor.

22        The calculation after acceptance of responsibility

23   would be 39 and we do move for the third level.

24              THE COURT:  Okay.  And does the defendant

16:06:27 25  agree that 39 is the appropriate adjusted offense level

1    after doing the grouping and combining the two sets of

2    counts?

3                    MR. SYNENBERG:  We do, Your Honor.

4                    THE COURT:  Okay.  And I take it that both

16:06:39  5    parties agree that though there is one point that is

6    attributed for the defendant's prior conviction, that that

7    one point still puts the defendant in a Criminal History

8    Category I?

9                    MS. ROWLAND:  The Government agrees, Your

16:06:54  10    Honor.

11                    MR. SYNENBERG:  We agree as well, Your Honor.

12                    THE COURT:  All right.  At a 39-I, the

13    defendant is in a 262- to 327-month custody range, which,

14    again, is within that contemplated by the parties at the

16:07:06  15    time of the plea.

16         There were a couple other issues that I want to

17    address with Mr. Synenberg as it relates to objections to

18    the Presentence Investigation Report.

19         There was an objection at paragraph two with respect

16:07:25  20    to the date of the Indictment in -- referenced in paragraph

21    153, but I understand that you've withdrawn that?

22                    MR. SYNENBERG:  I have, Your Honor.

23                    THE COURT:  Okay.

24                    MR. SYNENBERG:  We withdraw that objection.

16:07:37  25                    THE COURT:  All right.  There was another

1    issue whereas that the third objection had to do with your

2    objection to the fact that the probation officer has

3    characterized Mr. Russo's retirement account as an asset in

4    listing the financial assets and net worth of the defendant.

16:07:59  5         You objected to that characterization primarily

6    because you have entered into an agreement that some portion

7    of that retirement account would be withdrawn and forfeited

8    to the Government and that the remainder would not be

9    subject to attachment by the Government; is that correct,

16:08:16  10   Mr. Synenberg?

11             MR. SYNENBERG:  It is, Your Honor.  Yes, Your

12   Honor.

13             THE COURT:  Okay.  The -- I agree with Mr.

14   Riffle that it's technically an asset and it's certainly one

16:08:29  15   that he should have included in his references of the

16   defendant's assets for the Court's consideration.

17        But in light of the -- the agreement that the

18   defendant has entered into with the Government, Mr.

19   Synenberg is technically correct that it's not an available

16:08:44  20   asset.  I don't think that that means that we need to amend

21   the Presentence Investigation Report.

22        Do you think that that's necessary, Mr. Synenberg?

23             MR. SYNENBERG:  No, Judge.

24        I principally wanted the Court to understand that it

16:08:57  25   is not an available asset and I think you -- you understand

1   our argument, so I don't know that you need to amend the

2   report at this time.

3        $225,000, as you are aware, of that asset will be

4   received we believe in January from OPERS and when we do

16:09:19  5   receive that, we're going to give, as part of our agreement,

6   $155,000 to the Government and the remainder will go toward

7   paying taxes.

8             THE COURT:  Okay.  The last objection is

9   simply that the probation officer indicated that it's --

16:09:38 10   that the probation officer believed that the Court might

11   find a fine to be appropriate in these circumstances.

12        Your argument is that given his assets and net worth

13   and other -- other financial obligations, that there is

14   simply nothing there for a fine, so it's simply a debate

16:10:01 15   over how the Court should interpret this list of assets.

16        Is that fair, Mr. Synenberg?

17             MR. SYNENBERG:  That's fair, Your Honor.

18             THE COURT:  Okay.  But do you think that

19   there's any need for an actual change in the Presentence

16:10:13 20   Investigation Report?

21             MR. SYNENBERG:  No.  I believe that the Court

22   understands that Mr. Russo is unable to afford a fine at

23   this point in time and that's our argument and it's up to

24   the Court what to do with that.

16:10:23 25             THE COURT:  Okay.  And as the probation

1    officer pointed out in response to your objection,

2    obviously, the Court has to consider restitution and

3    Internal Revenue Service debts prior to being able to even

4    consider what might be available for a fine, and so, the

16:10:40 5    scope of those obligations may ultimately determine the

6    issue.

7                    MR. SYNENBERG:  Very well.

8         Thank you.

9                    THE COURT:  All right.  All right.  Then are

16:10:49 10    there any other factual objections or -- or sentencing

11    calculation objections to the Presentence Investigation

12    Report on behalf of the Government?

13                    MS. ROWLAND:  No, Your Honor.

14         Thank you.

16:10:59 15                    THE COURT:  Anything else relating to the

16    Presentence Investigation Report on behalf of the defendant?

17                    MR. SYNENBERG:  Not on behalf of the

18    defendant, Your Honor.

19                    THE COURT:  Okay.  All right.  Then the Court,

16:11:10 20    with the exceptions that I've noted, otherwise adopts the

21    Presentence Investigation Report as its findings of fact and

22    sentencing calculations in this matter.

23         The first step of the Court's sentencing determination

24    then lands us, as I said, at a Criminal History Category I

16:11:30 25    and a total adjusted offense level of 39, which puts the

1    defendant in a 262- to 327-month custody range.

2         The next step of the Court's sentencing determination

3    is to consider whether or not there's any guideline-based

4    bases for a departure in this matter.

16:11:48  5         Both parties have agreed in the plea agreement that

6    there are no such bases at this time and that neither is

7    seeking a departure with respect to -- or a departure from

8    these guideline calculations under the guidelines.

9         Is that correct on behalf of the Government?

16:12:07 10                   MS. ROWLAND:  Yes, Your Honor.

11                   THE COURT:  Is that correct on behalf of the

12   defendant?

13                   MR. SYNENBERG:  Yes, Your Honor.

14                   THE COURT:  All right.  And then, the Court

16:12:13 15  normally at this point turns to the third step of the

16   sentencing determination, looking at all of the factors

17   under 18 U.S.C. 3553(a) and considering the calculations

18   of -- or what is recommended by the guidelines to determine

19   what the most appropriate sentence for this defendant in

16:12:32 20  these circumstances is.

21        In this case, the parties have agreed, as I said, not

22   only not to seek a variance based on the Court's application

23   of those factors, but the parties have agreed that they

24   believe that a proper application of all of those factors

16:12:50 25  would result in a sentence specific in this case, which is a

1  sentence to the low end of the guideline range in this

2  matter.

3      Is that correct on behalf of the Government?

4          MS. ROWLAND:  Yes, Your Honor.

5          THE COURT:  Is that correct as it relates to

6  the parties' understanding on behalf of the defendant?

7          MR. SYNENBERG:  It is, Your Honor.

8          THE COURT:  Okay.  Obviously, the Court still

9  has both the obligation and discretion to consider all the

10  factors under 3553(a), taking into account the implications

11  of any decision it would make to vary from the parties'

12  agreement, so the Court does need to at least keep in mind

13  factors relating to the nature and circumstances of the

14  offense, the history and characteristics of the defendant,

15  the need for the sentences to be -- any particular sentence

16  to be imposed, as well as sentencing disparities or any

17  issues relating to restitution as -- for the victims of the

18  defendant's offense.

19      Before I turn to the issue of custody, I want to

20  address the issue of restitution.  There are some

21  complicated restitution calculations in this case.  The

22  parties did not agree to a restitution figure in the plea

23  agreement.  What the parties did was agree to a methodology

24  by which certain monies would be paid to the Government,

25  either by the date of sentencing or within a specified

1    timeframe thereafter, but beyond that, the parties did not

2    agree to a specific restitution figure.

3        So I'm going to turn now to the Government to address

4    the restitution calculations that the Government would

16:14:43  5    propose in this case.

6            MS. ROWLAND:  Thank you, Your Honor.

7        The total restitution figure that the Government seeks

8    in this case is $6,970,000 -- I'm sorry -- $6,970,905, and

9    it's broken down as follows by count of the Information:

16:15:09 10        Count 1 charges the extensive kickback scheme

11    involving VAS and the commercial appraisal contracts.  The

12    estimated loss to the county on this scheme of the

13    Indictment is $11.5 million.

14        In previous proceedings, this Court ordered Bruce

16:15:35 15    Zaccagnini to pay restitution on this scheme of $3,215,845

16    and did not order that it be joint and several with

17    co-defendants.  To date he has paid $589,000 -- $589,503.

18        This Court on a previous occasion ordered Mr.

19    Armstrong to pay $1,089,452.79 and he has paid that amount.

16:16:07 20        We have forfeited from the estate of Louis Damiani

21    $3,406,394.21.

22        In addition, total payments that have been made

23    through forfeiture and otherwise by Santina Klimkowski on

24    this scheme total $103,100.

16:16:30 25        So the total paid by co-defendants to date is

1      $5,298,349, which would leave a balance owed with respect to

2      this scheme of $6,301,551, and the Government would request

3      that this be ordered joint and several with Mr. Zaccagnini

4      and Ms. Klimkowski, who have not yet paid the total amount

16:17:00  5      they've been ordered to pay.

6           And eventually, as you know, we have charged Mr.

7      Mitchell with this scheme as well, so further proceedings

8      might affect the number of people who would be responsible

9      for this amount.

16:17:16 10          Count 2 involves --

11               THE COURT:  Well, wait a minute.  Let me back

12      up.

13           As to Mitchell, you're saying you want it joint and

14      several with Zaccagnini, Klimkowski, and Mitchell, but

16:17:24 15      Mitchell hasn't been convicted of anything?

16               MS. ROWLAND:  Correct.  Correct.

17               THE COURT:  Okay.

18               MS. ROWLAND:  Count 2 involves the

19      Alternatives Agency bribery scheme.  There the amount of the

16:17:33 20      bribes is approximately $8,000.

21           Mr. Kelley and Mr. Schuman have been convicted on the

22      scheme and Mr. Dimora is charged in the scheme.  In the plea

23      agreements of Mr. Kelley and Mr. Schuman, they have agreed

24      to pay $8,000 joint and several with their co-defendants in

16:17:54 25      this case.

1        No -- none of them have made any payments to date, so

2    we would request that the $8,000 be ordered for this

3    defendant, joint and several with Mr. Kelley and Mr.

4    Schuman, payable to Cuyahoga County, because Alternatives

16:18:13 5    Agency is no longer a going concern, it is no longer in

6    business.

7        Count 3 involves the Kleem conspiracy.  The amount of

8    the bribes is approximately $24,000.  Mr. Kleem has agreed

9    to pay that full amount of restitution and, therefore, the

16:18:45 10    Government does not seek any restitution with respect to Mr.

11    Russo.

12        Count 4 involves the Skuhrovec job-buying scheme.  The

13    loss to the county is estimated at $8,200.  The Government

14    requests that that be ordered in restitution in this case,

16:19:05 15    joint and several with other defendants, if they are

16    convicted.  That would be Mr. Skuhrovec and Mr. Dimora.

17        Count 5 charges the job-buying scheme involving the

18    Engineer's Office and the Auditor's Office and two

19    individuals in each of those offices.  The loss to the

16:19:29 20    county is estimated at $17,755.  That would be the amount of

21    the bribes, both cash and limo services.  There have been no

22    payments to date.

23        Mr. Payne was charged in this scheme.  His case has

24    been dismissed due to his death.  Mr. Kelley has agreed in

16:19:53 25    his plea agreement to the $17,755 restitution figure, but

1    nothing has been paid to date, so we would request

2    restitution in that amount of $17,755, joint and several

3    with Mr. Kelley.

4         Count 6 charges the Gallucci-election scheme.  The

16:20:17  5    loss to the county is estimated at $53,549, which represents

6    the value of the inflated salary that Mr. Gallucci received

7    over a three-year period.

8         Mr. Gallucci has agreed to pay $53,549 in restitution.

9    He has paid to date approximately $25,550 of that and is

16:20:47  10    making monthly payments of $1,055, so the Government would

11    request that the Court order restitution in the amount of

12    $12,999, joint and several with Mr. Gallucci.

13         Count 7 charges witness tampering, so no restitution

14    is requested.  There's no identifiable financial loss there.

16:21:06  15         Count 8, Paragraph A, charges the Kelley job-buying

16    scheme.  The loss to the county there is estimated at

17    $65,000, that would be $17,000 per year of increased salary

18    for the years 2003 through 2008.

19         No restitution has been paid to date.  The Government

16:21:25  20    requests restitution in the amount of $65,000, joint and

21    several with Mr. Kelley.

22         Count 8-B charges the Dennis Dooley job-buying scheme.

23    The loss to the county there is estimated at $85,417, the

24    amount of the bribe and the loss to the county from Mr.

16:21:44  25    Dooley not working full-time.  Mr. Dooley was ordered to pay

1    $25,625, has not paid anything to date, so the Government

2    requests a restitution order in the full amount, $85,417,

3    joint and several with Mr. Dooley.

4        Count 8-C charges a job-buying scheme involving PE-50.

16:22:13  5    The loss to the county in that scheme is undetermined and

6    the Government does not seek restitution.

7        Count 8-D involves a job-buying scheme involving

8    PE-47.  There the loss to the county is $25,000, that's the

9    value of raises that were given to PE-47 over a five-year

16:22:35  10    period; therefore, we ask that restitution be in the amount

11    of $25,000.

12        Count 8-E involves Mr. Gabor, the amount of the bribe

13    is $5,000.  The Government requests restitution in that

14    amount which, if Mr. Gabor is convicted on this count, would

16:22:59  15    be joint and several with him.

16        Count 8-F involves PE-49.  The loss to the county

17    there is estimated at $2,000, the amount of the bribe.  We

18    would request restitution in that amount.

19        Count 9 involves Mr. Bafna and Mr. Valentin.  The loss

16:23:18  20    to the county is estimated at $5,839 on the Bafna aspect of

21    it and $4,866 on the Valentin part of it.  Both defendants

22    have agreed to pay the full amount and have the capacity to

23    do that, in effect, Mr. Bafna, who was sentenced this

24    morning, has already paid that amount, so we do not request

16:23:50  25    restitution on this count.

1          Count 10 involving Judge Terry involves an estimated

2     loss of $9,000, the -- the best estimate of the benefit to

3     Mr. O'Malley's client as a result of the interference of Mr.

4     Russo in that case.

16:24:22  5          We would request -- and the loss to the county -- I'm

6     sorry -- and there's also a loss to the county of

7     approximately $15,000 for political work that PE-54 did on

8     county time.

9          Therefore, we request restitution of $24,000, which

16:24:38 10   could ultimately be joint and several with Judge Terry.

11         And I will provide the Court with the name and address

12    of the person at American Home Bank that that restitution

13    should go to who was the other party in the litigation.

14         So that the -- the amount for the -- to the county in

16:24:55 15   that count would be $15,000, the amount to American Home

16    Bank would be $9,000.

17         Count 11 involving Judge McCafferty, there is no loss

18    that can be determined at the present time in that count, so

19    we request no restitution in that count.

16:25:14 20        Count 12 involving the bribe paid by Ron Romanini in

21    the form of a roof, valued at $15,000, we request no

22    restitution because Mr. Romanini has agreed to pay the full

23    amount and he has the ability to do that and we expect that

24    he will be doing that in January.

16:25:36 25        Count 13 involves witness tampering, so, again, the

1       Government does not seek restitution.

2             Count 14 involves the bribery related to a commercial

3       property valuation.  The loss to the county is estimated at

4       $51,000.  There were other participants involved, one is Ms.

16:26:18  5       Klimkowski and her involvement was proffer protected,

6       another is Attorney-1 and another is PE-32.  Therefore, we

7       ask that the full amount be assessed to Mr. Russo of

8       $51,000.

9             Count 15 involves bribes paid by PE-53.  The loss to

16:26:42  10      the county there is $355,983 based on the value of

11      overcharges on a county contract.  No one else has been

12      charged in that scheme at the present time, and so, the

13      Government requests that the whole amount be assessed

14      against Mr. Russo.

16:27:03  15      Count 16 involving Vincore, there's -- the loss cannot

16      be determined at this time, so the Government seeks no

17      restitution.

18             The remaining counts are tax counts and we would

19      suggest that the Court not order restitution on the tax

16:27:19  20      counts and leave that to the civil processes of the IRS

21      given the substantial amounts of restitution that are owed

22      to Cuyahoga County.

23             Thank you, Your Honor.

24                   THE COURT:  I assume the Government wants a

16:27:43  25      standard order requiring cooperation with and payment to the

1    IRS once the amounts are determined as part of the judgment

2    entry?

3                    MS. ROWLAND:  Yes, Your Honor.

4         Although, the IRS will no doubt be deferring to

16:28:01  5    Cuyahoga County as being the primary victim here.

6                    THE COURT:  On the tax counts?

7                    MS. ROWLAND:  No, Your Honor.

8                    THE COURT:  Yeah.  That's what I meant.

9                    MS. ROWLAND:  In the case overall.

16:28:09  10                    THE COURT:  Right.  I understand that.

11         You meant in terms of priority of collection?

12                    MS. ROWLAND:  Correct.

13                    THE COURT:  Okay.  All right.  Mr. Synenberg,

14    there's a lot here.  I know that the Government provided you

16:28:23  15    with a copy of their notes, as they did for me.

16         Now, the total restitution amount that the Government

17    is requesting is $6,970,950.  There are some references to

18    potential joint and several liability, but in several cases

19    they are as to defendants who have not yet been convicted of

16:28:44  20    anything, and so, there may, in fact, never be a joint and

21    several obligation as it relates to those other defendants.

22         Do you at this point object to the Government's

23    calculation or have any evidence to present to the Court

24    that the calculations are mistaken?

16:28:59  25                    MR. SYNENBERG:  No, Your Honor.

1          We accept the representations by the Government as

2     being accurate for purposes of the judgment entry put

3     forward.

4                    THE COURT:  Okay.  Then let me go -- there are

16:29:11  5     a couple other restitution issues that I want to address.

6          I want to make sure that all of the parties'

7     agreements in the plea agreement have been either satisfied

8     or will be satisfied by a date certain.

9          You mentioned earlier that there was an agreement to

16:29:26 10     withdraw monies from the defendant's Ohio Public Employees

11     Retirement Systems account and that it's the defendant's

12     obligation to deliver from that OPERS fund a certified check

13     or money order in the amount of $155,000 to the Government

14     and to use the remaining funds from the $225,000 withdrawal

16:29:49 15     to pay taxes.

16          Is that correct?

17                    MR. SYNENBERG:  Yes, Your Honor.

18                    THE COURT:  All right.  And when do you

19     anticipate that those monies will be forthcoming?

16:29:56 20                    MR. SYNENBERG:  I believe our agreement calls

21     that we would -- we've agreed to transmit those funds to the

22     Government within two days of our receipt.  It's our best

23     estimation we should have them before the end of January.

24                    THE COURT:  Okay.  Is the Government satisfied

16:30:11 25     with simply a reference to within -- within two days of

1    receipt or does the Government want me to set a date certain

2    in the judgment entry?

3              MS. ROWLAND:  Your Honor, I think we would

4    prefer within two days of receipt.

16:30:23  5              THE COURT:  Okay.  All right.  Second, the

6    defendant agreed to obtain a cash surrender value of his

7    life insurance policy and to deliver a certified check or

8    money order in the amount of that surrender value to the

9    U.S. Attorney's Office, and I understand that has already

16:30:41  10   been done.

11        Is that correct, Mr. Synenberg?

12             MR. SYNENBERG:  It has.  Everything has been

13   paid with respect to the cash value of the insurance.

14             THE COURT:  Okay.  And that $35,000 figure

16:30:49  15   representing a one-half interest in the purchase price of

16   the defendant's condominium has already been paid?

17             MR. SYNENBERG:  It has, Your Honor.

18             THE COURT:  All right.  Now, turning to the

19   agreement to liquidate the defendant's campaign account and

16:31:05  20   to pay that either to Cuyahoga County, if permissible by

21   law, or to the identified charities in the plea agreement,

22   has that been done?

23             MR. SYNENBERG:  It hasn't, Judge.

24        We have written two letters to the Cuyahoga County

16:31:21  25   Prosecutor's Office asking them if they believe there is a

1    claim for the county.  Although Mrs. Rowland and I have

2    discussed this, although I haven't heard back from the

3    county, if we haven't heard within ten days, Judge, the plea

4    agreement accounts for us to make equal distributions I

16:31:37  5    believe to nine separate charities and we believe there's

6    approximately --

7                    THE COURT:  Eight.

8                    MR. SYNENBERG:  Eight.  I'm sorry.

9                    THE COURT:  That's okay.

16:31:43 10                    MR. SYNENBERG:  We believe there's

11    approximately $75,000 in Mr. Russo's accounts.

12        We will make payments to those eight charities within

13    the next ten days unless the county lays claim to these

14    funds.

16:31:56 15                    THE COURT:  Okay.  I mean, all you can do is

16    ask if they have any legal basis by which they're entitled

17    to it, and if they don't respond, there's not much you can

18    do.

19        The last -- or there's two last agreements in the

16:32:16 20    restitution.  One is that the defendant agrees to make 30

21    monthly consecutive payments of $1,500 from his OPERS

22    distribution every month beginning within 60 days of the

23    Court's sentencing order.

24        I assume, Mr. Synenberg, that you have no objection to

16:32:31 25    the Court incorporating that into its judgment entry?

1          MR. SYNENBERG:  No objections, Your Honor.

2          THE COURT:  All right.  And then, the last

3    agreement is the Government's agreement, in light of all

4    these other distributions, from the defendant's OPERS

16:32:44   5    account that the Government would not seek further funds

6    from that account or to collect out of that account the

7    restitution obligation that the Court will impose,

8    recognizing, however, that the Government has full authority

9    to seek restitution from any other source where restitution

16:33:09  10    assets might be available.

11        All right.  With that outline, are there any other

12    issues with respect to restitution in this matter?

13          MS. ROWLAND:  Not that I'm aware of, Your

14    Honor.

16:33:17  15          MR. SYNENBERG:  Not that I'm aware of, Judge.

16          THE COURT:  Okay.  All right.  Then turning

17    back to the analysis of all the 3553(a) factors,

18    particularly relating to the sentencing in this case, Mr.

19    Synenberg, is there anything that you would like to say or

16:33:42  20    the defendant would like to say on his own behalf?

21          MR. SYNENBERG:  Your Honor, given the fact

22    that there is an 11(c)(1)(C) agreement, I elect not to speak

23    on behalf of Mr. Russo at this time.  However, I do know

24    that Mr. Russo has something that he would like to say to

16:33:57  25    the Court.

1          THE COURT:  Okay.  Mr. Russo.

2          MR. SYNENBERG:  Would you like us to approach,

3     Judge?

4          THE COURT:  No.  He can stand there, if you

16:34:06 5     like.

6          THE DEFENDANT:  My brothers and I were brought

7     up to be honest and always act in an ethical way.

8          I cannot identify the exact time that I strayed from

9     this directive, but there came a point in time in my life

16:34:24 10     when I made a decision to act in a fashion that I can now

11     say was terribly wrong, which I truly regret.

12          I knew better than to act as -- knew better than to

13     act in this way.  My decision to accept money and gifts is a

14     decision that I will have to live with for the rest of my

16:34:43 15     life.  There are no adequate words to remove that

16     embarrassment and shame.  There are no actions I can take to

17     change the past.  I wish there were.

18          I truly learned from my mistakes.  I apologize.  I

19     apologize to my family.  I apologize to my friends.  I

16:35:04 20     apologize to other elected officials.  I apologize to the

21     agents and prosecutors in this case.  I apologize to this

22     honorable court system.  And also, I apologize to the many

23     citizens of Cuyahoga County who I let down with my actions

24     and poor decisions.

16:35:24 25          I am truly sorry for betraying the trust to everyone

1   who ever mattered to me in my life and I wish to convey my

2   regrets and apologies to all I have hurt.

3        Thank you.

4             THE COURT:  All right.  Mr. Russo, let me ask

16:35:38  5   you a question.

6        I have to say that I honestly did not recall until I

7   saw the Presentence Investigation Report that you were

8   previously convicted of dereliction of duty in connection

9   with your activities as a public servant.

16:35:54  10       Having been convicted once and pled guilty to that

11   kind of an offense, why -- what is it that didn't stop you

12   from going down this road so much farther?

13             THE DEFENDANT:  The case I was involved in was

14   a matter of employees of the Recorder's Office whom I didn't

16:36:18  15   personally hire that were there doing work for title

16   companies and because I was the Recorder, I took

17   responsibility for their actions of dereliction of duty.

18             THE COURT:  All right.  So you're saying that

19   these are of completely different characters?

16:36:31  20             THE DEFENDANT:  Correct.

21             THE COURT:  Okay.  Again, given the

22   constraints that you have placed on yourself by virtue of

23   the plea agreement, is there any recommendation that you

24   would like to make on behalf of the Government?

16:36:46  25             MS. ROWLAND:  No, Your Honor.

1       The plea agreement really says it all in terms of the

2  Government's position in this case.  It is a straight

3  application of the guidelines, which are driven by the

4  amount of the bribes in this case, that being between $1

16:37:08  5  million and $2.5 million, which resulted in a 16-level

6  increase under the guidelines, and really is a good

7  reflection of the seriousness of this offense.

8       I don't think I need to belabor the seriousness of the

9  series of cases.  This Court has commented on that in

16:37:30 10  previous proceedings, as has Judge Adams as recently as of

11  this morning, and it may be decades before we can assess the

12  damage that this investigation has and prosecution has

13  exposed in our county government, as the honest public

14  officials that remain, the honest public employees that

16:37:55 15  remain, and honest business people work hard to try to

16  restore the trust that these citizens deserve in their

17  county government.  It's just impossible to determine what

18  the impact of that is.

19       I would like to state, Your Honor, that the Court

16:38:16 20  should be aware of a new development over the past few weeks

21  that may require future proceedings in this case.

22       Mr. Russo, through his attorney, recently approached

23  the Government and indicated an interest in cooperating in

24  this continuing investigation and in testifying, if needed,

16:38:36 25  in cases that are now pending or may be charged in the

1    future in this court.

2         The parties are beginning the process of exploring

3    this offer of cooperation, although the Government made

4    clear to Mr. Russo that we would not agree to a postponement

16:38:51 5   of the sentencing in this case, nor would we agree to a

6    postponement of the agreed reporting date in this case of

7    May 16th.

8         However, the Government is willing to evaluate this

9    offer of cooperation and consider at the appropriate time

16:39:06 10  making a motion under Rule 35 so that this Court can

11   evaluate the nature and extent of the defendant's

12   cooperation.

13        I just wanted to make the Court aware of that since

14   it's about to sentence the defendant.

16:39:20 15            THE COURT:  With respect to a Rule 35 or

16   possible Rule 35 motion, does the Government anticipate that

17   it would prepare -- be prepared to make that motion within

18   the one-year timeframe or at least lodge one?

19            MS. ROWLAND:  We would certainly lodge one

16:39:35 20  within the one-year timeframe.

21        It's a little difficult to anticipate how events will

22   unfold as a result of Mr. Russo's cooperation, but we would

23   certainly lodge one within the one-year time period.

24            THE COURT:  Okay.  All right.  And you

16:39:50 25  understand, Mr. Synenberg, that while it's possible that

1    there may be additional motions from the Government that

2    might benefit your defendant's -- the defendant's sentence

3    or ultimate sentence in this matter, that given the fact

4    that we are moving forward today, that the Court cannot take

16:40:06  5    any potential cooperation into consideration at this time?

6                    MR. SYNENBERG:  We understand that, Your

7    Honor.

8                    THE COURT:  Okay.  All right.

9                    (Off-the-record discussion between the

16:40:11 10        Defendant and Mr. Synenberg.)

11                   MR. SYNENBERG:  Thank you, Judge.

12        We're fine.

13                   THE COURT:  Okay.  In connection with a Rule

14    11(c)(1)(C) plea, it is usually the Court's assessment or

16:40:41 15    the determination the Court must make is whether to accept

16    the parties' agreement and it's not exactly the same

17    analysis that the Court usually undertakes under 18 U.S.C.

18    3553(a).

19        Having considered this matter carefully, however, the

16:40:57 20    Court concludes that the two do actually dovetail in this

21    case.  The Court does not accept the parties' agreement

22    cavalierly or lightly and ultimately does so through a

23    proper application of the factors under 18 U.S.C. 3553(a).

24        I will not, as the Government has not, at this time

16:41:23 25    belabor the seriousness of these offenses.  Just going

1  through this restitution analysis shows the scope of the

2  public corruption that was involved and the damage that has

3  been done to this county and this community because of the

4  defendant's actions.  Clearly, the nature and circumstances

16:41:45 5  of the offense are severe and warrant a substantial sentence

6  in this case.

7          As it relates to the history and characteristics of

8  the defendant, the defendant, other than the one criminal

9  history point, has no other criminal history and has close

16:42:02 10  family ties in the community, but the defendant also had

11  many of opportunities that -- many opportunities that his

12  family gave him and that this community gave him to live an

13  exciting and active life as a public official and he

14  squandered those opportunities and betrayed the trust that

16:42:22 15  was placed in him by both his family and the community.

16          The -- there is a need for a substantial sentence to

17  address this defendant's conduct.  There's a need for a

18  substantial sentence to deter others from criminal activity.

19  And there is a need for a meaningful sentence so that there

16:42:41 20  is an opportunity for the defendant to -- to fully analyze

21  the full impact of the harm to the community.

22          With respect to sentencing disparities, it is true

23  that a number of individuals have been sentenced in this

24  case to much lesser sentences than the Court is about to

16:43:03 25  impose upon the defendant, but that's because those

1    defendants were involved in one scheme or a number of small

2    schemes rather than involved in all of the counts that have

3    been brought against this defendant.  So there's no real

4    ability to compare by way of sentencing disparities the

16:43:24  5    sentences that the Court has imposed on others given the

6    scope of the corruption charges here.

7          The -- ultimately, the Court concludes that given the

8    substantial restitution that the defendant will pay to the

9    victims, given the need for a substantial sentence, and

16:43:45  10   given the -- the fact that the guidelines in this case

11   recommend a substantial sentence, that the guidelines got it

12   right, that the parties got it right, and that a sentence of

13   262 months in the custody of the Bureau of Prisons is the

14   appropriate sentence in this case for this defendant and is

16:44:11  15   that sentence which is no more than reasonably necessary to

16   address all of the sentencing factors under 3553(a).

17         So, as I said, the Court is both accepting the

18   defendant's agreement and finding that that agreement is

19   consistent with all of the sentencing factors the Court is

16:44:28  20   to consider, as well as the advice provided by the

21   guidelines.

22         So pursuant to the Sentencing Reform Act of 1984 and

23   to 18 U.S.C. 3553(a), Mr. Russo, it's the judgment of the

24   Court that you're hereby committed to the custody of the

16:44:44  25   Bureau of Prisons to be imprisoned for a term of 262 months.

1          Upon release from the custody of the Bureau of

2     Prisons, you'll be placed on supervised release for a term

3     of three years.

4          To the extent that these apply to a variety of counts,

16:45:02 5     all of the terms, both the custody term and the supervised

6     release term, are to be served concurrently so that these

7     represent totals with respect to your custody and your

8     supervised release.

9          While on supervised release, you will comply with all

16:45:18 10     standard conditions that have been adopted by the Court.

11     There are 13 or 14 such conditions that will be provided to

12     you in writing.  Among those is the obligation to refrain

13     from any violation of federal, state or local law, to

14     refrain from the use or possession of any illegal substance,

16:45:34 15     and to refrain from the possession of a firearm.

16          The -- those are only the -- I only referenced those

17     three because those are the ones I see most often in

18     violation hearings, but there are 13 or 14 conditions that

19     you must completely comply with.

16:45:49 20          Do you understand that?

21               THE DEFENDANT:  Yes.

22               THE COURT:  All right.  The -- in addition to

23     those conditions, there will be a variety of special

24     conditions that you will have to comply with, one of which

16:46:01 25     relates to your restitution obligation.

1        You will pay restitution in this matter in the amount

2    of $6,970,950.  Those -- that -- those restitution figures

3    will be broken down pursuant to or in accordance with the

4    figures that have been provided by the Government.  To the

16:46:24 5    extent that the Government has suggested any joint and

6    several responsibilities with respect to defendants who have

7    not yet been convicted of any offense, that -- those will

8    not be ordered to be joint and several at this point in time

9    and may -- and at this point will simply be imposed upon you

16:46:42 10    in your individual capacity pending any further

11    determinations as to those defendants.

12        The -- your restitution obligation, you can begin to

13    make payments as relating to your restitution obligation

14    through the Bureau of Prisons Inmate Financial

16:47:01 15    Responsibility Program at the rate of $25 per month while

16    you are incarcerated.

17        If a restitution balance remains upon your release

18    from imprisonment, you -- you will commence payments on

19    restitution no later than 60 days following release from

16:47:13 20    imprisonment and you will make those payments at a minimum

21    rate of at least ten percent of your gross monthly income

22    during your period of supervision.

23        The judgment entry in this case will also reflect the

24    30 consecutive payments of $1,500 each that you are to make

16:47:33 25    to the Government from your OPERS distribution amounts and

1    that is to commence within 60 days of the date of this

2    judgment.

3         Your restitution order is technically due and payable

4    immediately, which means that if there are assets, the

16:47:53  5    Government can levy upon them.  To the extent that they have

6    not agreed to avoid any particular asset, the Government

7    could fully reach any assets that might be available.

8         To the extent that those -- that restitution is not

9    fully paid by such actions, the restitution remains a

16:48:13 10    condition of your supervised release and any failure to make

11    attempts to make your payments for your restitution

12    obligation could result in a violation of your supervised

13    release term and possibly a revocation of that supervision.

14         Do you understand that?

16:48:27 15              THE DEFENDANT:  Yes.

16              THE COURT:  All right.  You will also be

17    subject to some special conditions, as I said, as they

18    relate to your -- your financial restrictions to be imposed

19    upon you.

16:48:40 20         You will provide to the probation officer access to

21    any requested financial information and you will not incur

22    any credit charges or open any additional lines of credit

23    without the prior approval of your probation officer.

24         You'll be subject to a windfall condition, which means

16:48:56 25    all monies received from income tax refunds, lotteries,

1    winnings, judgments or other anticipated or unexpected

2    financial gains will be applied against the outstanding

3    court-ordered obligation that I have just imposed.

4         I am not going to impose a fine upon you in this case,

16:49:16  5    despite the fact that there would be a substantial basis for

6    doing so.  The Government has agreed not to request a fine

7    because of the importance of attempting to make -- of you

8    attempting to make restitution payments to the county.  It

9    is more important if monies are available -- Ms. Bacon,

16:49:38 10    please.

11         MS. BACON:  I'm sorry, Your Honor.

12         THE COURT:  It is more important if monies are

13    available that they be paid to the victims of the offense

14    rather than into the Clerk of Court in the manner of a fine.

16:49:49 15         You will pay a special assessment, however, of $2,100,

16    which is due and payable immediately.

17         The Court is going to also impose upon you a standard

18    search condition, which means that your person, residence,

19    place of business, computer or vehicle will be subject to a

16:50:13 20    warrantless search conducted and controlled by the U.S.

21    probation officer at a reasonable time and in a reasonable

22    manner based upon reasonable suspicion of contraband or

23    evidence of a violation of a condition of release.  Failure

24    to submit to a search may be grounds for revocation of your

16:50:28 25    supervision.

1          There is also an Internal Revenue Service condition.

2     I am not going to impose a dollar figure restitution amount.

3     I will leave it to the Internal Revenue Service to calculate

4     what monies might be owed and to exercise their discretion

16:50:45  5     with respect to whether and to what extent to collect those

6     monies before your restitution obligation to the county has

7     been completed.

8          You -- but you will fully cooperate with the Internal

9     Revenue Service by filing all delinquent or amended returns

16:51:04  10    and you will timely file any future returns that might come

11    due and owing.

12         You are to properly report all correct taxable income

13    that is owed and you are to work with the Internal Revenue

14    Service to determine if there are any outstanding

16:51:22  15    obligations that you owe and to determine what the most

16    appropriate payment schedule with respect to those

17    outstanding obligations, including any interest or

18    penalties, might be.

19         All right.  This is not a drug offense, there's no

16:51:56  20    evidence of drug use, so the Court waives the mandatory drug

21    testing requirements that would otherwise be imposed under

22    the Violent Crime Control and Law Enforcement Act of 1994.

23    That doesn't relieve you of the obligation to refrain from

24    the use of any illegal substance, but given your record and

16:52:18  25    history, the Court sees no basis to impose a drug testing

1    requirement or drug treatment requirement in this case.

2        All right.  There are no counts that need to be

3    dismissed?

4                MS. ROWLAND:  No, Your Honor.

16:52:35 5        There -- I have two other matters, but I'll wait

6    until --

7                THE COURT:  Okay.  Well, you can address them

8    now.

9                MS. ROWLAND:  First, I may not have spoken

16:52:45 10   clearly.  The total restitution amount that the Government

11   is seeking is $6,970,905, not $950, a minor point.

12       And I'm wondering if Mr. Synenberg and I could have a

13   moment to consult with the Probation Department about one

14   matter or come to the sidebar or both?

16:53:08 15               THE COURT:  Well, why don't you talk to them

16   first and then come and tell me what it's about.

17               (Off-the-record discussion between the U.S.

18           Assistant Attorneys, Mr. Synenberg, and the Probation

19           Department.)

16:54:01 20               THE COURT:          Let's approach.

21               (Off-the-record sidebar discussion between

22           the Court, the U.S. Assistant Attorneys, and Mr.

23           Synenberg.)

24               THE COURT:  Okay.  Let me back up.  There is

16:58:25 25   one correction.

1    Because the sentence is so high, it exceeds the

2    statutory maximum for any single count that -- with which

3    the defendant has been charged, which means that while the

4    Court can impose a 262-month sentence upon the defendant, it

16:58:44  5    has to break it up so that there is no doubt that the Court

6    has not exceeded the statutory maximum in any particular

7    instance.

8        So the sentence will be served as follows:

9        240 months as to Count 1, 22 months as to Count 2, to

16:59:15 10    be served consecutive to each other.

11        The other counts, Counts 4 through 14 and 16 and

12    Counts 3, 5, and -- I'm sorry -- 3, 15, 17 through 21 are to

13    be served at the statutory maximum amount and will be served

14    concurrently with each other and with Counts 1 and 2.

16:59:47 15        So the Court will spell it out in the judgment entry.

16        I assume the defendant does not object to the Court

17    making it clear in the judgment entry exactly to what extent

18    this sentence exceeds the statutory maximum on any given

19    count and assures that the counts will properly be accounted

17:00:07 20    for?

21                    MR. SYNENBERG:  That's fine with us, Judge.

22                    THE COURT:  Okay.  Is that sufficient for the

23    Government?

24                    MS. ROWLAND:  It is, Your Honor.

17:00:13 25        Thank you.

1          THE COURT:  Okay.  There is one other issue

2    that I want to put on the record.  There is apparently an

3    issue that was not caught as it relates to the information

4    in the Presentence Investigation Report.

17:00:25   5          There's apparently a factual error in the report in

6    that the report attributes 50 percent of the value of the

7    condominium at which Mr. Russo lives to him as an asset.

8    The parties agreed, and the Government agreed, that Mr.

9    Russo is not an owner of that condominium and that to the

17:00:50  10   extent that he has a 50 percent ownership, he has a

11   50 percent ownership in the furnishings, which is what is

12   reflected in the $35,000 payment to which the defendant

13   agreed in his plea agreement.

14          So the probation officer has agreed to correct that

17:01:06  15   factual information in the report so that there will not be

16   an inaccuracy.

17          With respect to the restitution dollar figure, I don't

18   know, Ms. Rowland, whether you misspoke or I misheard, but I

19   did write it down as 950, but I will correct it, so the

17:01:22  20   restitution obligation is $6,970,905 exactly.

21          All right.  Sir, by virtue of your plea in this case,

22   you have waived your right to appeal from the conviction on

23   all of these counts.  By virtue of your plea agreement,

24   you've also waived virtually all of your rights to appeal

17:01:45  25   from the sentence that has just been imposed.  This is

1    particularly true because the sentence imposed is one that

2    you agreed to as a sentence certain pursuant to Rule

3    11(c)(1)(C).

4         There are certain rights that can't be waived,

17:01:59  5    however, in a written plea agreement.  Those have to do with

6    your ability to object to the adequacy of the performance of

7    your own counsel or to the ethical performance of the

8    Government's counsel.  I simply inform you that these

9    limited rights exist because they can be waived by the

17:02:14  10    passage of time.

11         So you should discuss with Mr. Synenberg at your

12    earliest opportunity whether there's any additional

13    proceedings you wish to pursue in this matter.

14         Do you understand?

17:02:22  15              THE DEFENDANT:  Yes.

16              THE COURT:  All right.  As it relates to the

17    issue of voluntary surrender, does the Government have any

18    objection to a voluntary surrender of this defendant?

19              MS. ROWLAND:  No, Your Honor.

17:02:31  20              THE COURT:  All right.  The defendant has been

21    on bond pending these proceedings, he has been compliant

22    with all of his terms and conditions of release, and has

23    worked with the Government to reach a plea resolution in

24    this matter.

17:02:46  25         For all these reasons, the Court concludes that the

1    defendant is a good candidate for voluntary surrender and I

2    will allow the defendant to voluntarily surrender to the

3    Bureau of Prisons.

4         I will direct the Bureau of Prisons to set the

17:02:59  5    surrender date for May 16th --

6              MS. ROWLAND:  Yes, Your Honor.

7              THE COURT:  -- 2011, as per the parties'

8    agreement.

9         That means, sir, that you will have to comply with all

17:03:13  10   bond conditions that have been previously imposed upon you,

11   including all reporting conditions that go along with those.

12        Do you understand?

13             THE DEFENDANT:  Yes.

14             THE COURT:  Any violation of your term of bond

17:03:22  15   could result in immediate custody and to the immediate

16   commencement of your sentence.

17        Do you understand?

18             THE DEFENDANT:  Yes, Your Honor.

19             THE COURT:  All right.  Is there anything more

17:03:29  20   for the Government?

21             MS. ROWLAND:  No, Your Honor.

22        Thank you.

23             THE COURT:  Okay.  Any other objections to the

24   sentence for the defendant or anything more you want to

17:03:40  25   address?

1          MR. SYNENBERG:  We would respectfully request,

2     Judge, that the Court make a recommendation to the Bureau of

3     Prisons that Mr. Russo be permitted to serve his sentence at

4     FCI Elkton.

17:03:50  5          THE COURT:  Okay.  I will make that

6     recommendation.  It is a recommendation only.  As you know,

7     the Bureau of Prisons will have to make its own

8     determination, but I will note the request for Elkton and I

9     will note that that facility is one of the closest

17:04:07 10    facilities possible to his family here in the Northern

11    District of Ohio.

12          MR. SYNENBERG:  Thank you, Judge.

13          THE COURT:  All right.  Anything else?

14          MS. ROWLAND:  No, Your Honor.

17:04:13 15      Thank you.

16          THE COURT:  Okay.  This Court is adjourned.

17                          - - -

18          (Proceedings concluded at 5:04 p.m.)

19

20

21

22

23

24

25

1

2                      **C E R T I F I C A T E**

3

4          I certify that the foregoing is a correct transcript

5     of the record of proceedings in the above-entitled matter

6     prepared from my stenotype notes.

7

8              */s/ Sarah E. Nageotte*              *12/21/2010*
               SARAH E. NAGEOTTE, RDR, CRR, CBC              DATE
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25